### JOHN CULVER *versus* THOMAS ASHLEY.

If one of the parties to an unauthorized award performs it on his part, and the other party accepts such performance, the latter thereby ratifies the award and is bound to perform it on his part.

After one of the parties has received the benefits of such an award, *it seems* he cannot repudiate it on the ground that he ratified it in ignorance of the facts, unless he can and does restore the other party to as good a situation as he was in before the ratification.

THIS was an action of debt. The declaration contained a special count on an award, and the general money counts.

Upon the report of an auditor it appeared, that the defendant leased a farm to the plaintiff for one year from the 25th of April, 1833, and that the plaintiff occupied the premises from that day until the 8th of March, 1834 ; that in January, 1834, the defendant commenced an action against the plaintiff, on notes and accounts and on the covenants in the lease ; that that action, together with all demands between the parties, were submitted by deed to arbitrators ; that by the submission, the arbitrators, if they should find Culver indebted to Ashley, were to estimate certain property of Culver, and Ashley was to receive the same in part payment of his claim, and if they should find Ashley indebted to Culver, they were so to award ; that on the 5th of March, 1834, the arbitrators made an award, that Ashley should have certain chattels upon the farm, that Culver should within one week quit the farm, and if he should remove within that time and leave the premises and property in the same situation they were then in, Ashley should pay him $ 34·72, and costs of the reference, taxed at $ 19·57 ; that the account of the defendant, as allowed, was larger in amount than that of the plaintiff, but by adding the appraised property to the plaintiff's charges, the balance was reversed ; that the sum of $ 13·46 was indorsed upon the award on the day of its publication ; that the auditor was of opinion that this sum was paid at that time, by the defendant to the plaintiff, by giving up a note which the defendant held against the plaintiff for that amount, and that such payment was meant to be in part satisfaction of the award ; that the plaintiff paid about $ 9 of the costs of reference ; that no objection was taken to the justness

or legality of the award, or any particular inquiry made concerning it, until some days after its publication, and no disclosure was made by the arbitrators to either of the parties, of the principles on which the award was founded, until October 1834, when one of the arbitrators made a statement to the defendant's counsel ; that the arbitrators, in deviating from the submission, acted, as they supposed, according to the mutual wishes of the parties ; and that the plaintiff performed, on his part, the conditions of the award.

*Leonard* and *Blair*, for the plaintiff.

*Alvord* and *W. G. Bates*, for the defendant.

MORTON J. When this case was before the Court at a former term, the award was determined to be invalid, because the arbitrators had exceeded their authority. 17 Pick. 98. That was the only question then submitted to our decision. But the case has again been tried, and the plaintiff's claim placed on different grounds. It is now contended, that although the arbitrators exceeded their authority and the award in itself had no binding force, yet that the parties, by their subsequent conduct, adopted and ratified it.

There can be no doubt that arbitrators mutually agreed upon are so far the agents of the parties, that their acts are the proper subjects of ratification. *Perkins* v. *Wing*, 10 Johns. R. 143. Indeed no such relation is necessary. If a perfect stranger assumes to act for a party, the latter may adopt his agency, and has an election either to ratify or to reject the acts thus done by him. A subsequent ratification is equivalent to a previous authority. Paley on Agency, 143 ; *Ward* v. *Evans*, 6 Mod. 37 ; *S. C.* 2 Ld. Raym. 930 ; *Thorold* v. *Smith*, 11 Mod. 88 ; *Wilson* v. *Poulter*, 2 Str. 859 ; *Clarke* v. *Ryall*, 1 W. Bl. 642 ; *Herring* v. *Polley*, 8 Mass. R. 120 ; *Lent* v. *Padelford*, 10 Mass. R. 236 ; *Clement* v. *Jones*, 12 Mass. R. 60 ; *Erick* v. *Johnson*, 6 Mass. R. 193 ; *Barnaby* v. *Barnaby*, 1 Pick. 221 ; *Copeland* v. *Mercantile Ins. Co.* 6 Pick. 198. Has the defendant adopted and ratified the unauthorized acts of the arbitrators ? They awarded several things to be done by each of the parties.

The plaintiff, whose lease of the farm had not expired, was required to leave it, in the condition prescribed, within one

26

week, and to transfer to the defendant the personal property on the farm. All this was punctually and faithfully performed by the plaintiff.

The defendant, on his part, in consideration of these things to be done by the plaintiff, was to pay him $ 34·72 and the expense of the reference, taxed at $ 19·57 ; in the whole, $ 54·29. He accepted the personal property awarded to him, received possession of the real estate, and paid a part of the sum awarded to the plaintiff. We can entertain no doubt that the person who took charge of the property on the farm was the defendant's agent, and that the note which he gave up was intended to be in part satisfaction of the award.

Now the defendant, having received all the benefits of the award, cannot avoid the charges and duties imposed upon him by it. Indeed it cannot for a moment be doubted, that these acts are amply sufficient to show a ratification.

But it is contended that these acts were done by the defendant in ignorance or misapprehension of his rights. It is undoubtedly true, that a ratification, to be valid, must be made understandingly. Acts done in pursuance of the decision of the arbitrators, and in a belief of its validity, are evidence of submission to a binding judgment, rather than of the adoption of an unauthorized award. If the defendant assented to the award and recognized its validity, in ignorance of the circumstances, he was bound, as soon as he discovered the facts, to notify the other party of his determination to rescind his ratification. And the omission to give notice of rejection has been deemed sufficient evidence of ratification. *Frothingham* v. *Haley*, 3 Mass. R. 70 ; *Cairnes* v. *Bleeker*, 12 Johns. R. 300. But the defendant could not repudiate his ratification without restoring the plaintiff to as good a situation as he was in when the award was made. It would be most unjust for him to refuse to perform his part of the award, while he retains the fruits of it. And if the plaintiff cannot be placed *in statu quo*, it would be more reasonable and equitable to hold the defendant to an agreement which he may have incautiously or ignorantly made, than that the plaintiff, who has been guilty of no negligence or mistake, should be subjected to loss or injury. Let him who has committed the error hear the conse-

quence of his own rashness or ignorance. But we have no need to rely on this reasoning, for we are well satisfied that the defendant acted under a full knowledge of all the circumstances. He knew the terms of the arbitration agreement which he had executed; he was conusant of all the proceedings of the arbitrators; he knew that in exceeding their authority they acted by the request of both parties; he knew the terms of the award, that they required a transfer to him of more property than was needed to pay the balance due him, and that he was required to pay for the excess and to pay the cost of the arbitration. With this knowledge, he accepted from the plaintiff, possession of the farm, all the personal property, and whatever else he was required to do, and on his own part paid a part of the debt and a part of the cost awarded against him. A stronger case of a free, full and understanding ratification, cannot well be imagined.

If the defendant acted under any mistake of his legal rights, it must have arisen from his own misapprehension of the law. If he supposed that the award was obligatory upon him, he mistook his legal duties and liabilities. Every one is presumed to know the law. And whether this presumption be well founded or not, it is the only one upon which legal justice can be administered. All the facts now known to us, were then known to him; and if he drew illegal inferences from them, the injury, if any has been sustained, should rest upon him and not on a party who has made no mistake and been guilty of no neglect.

The award, having no validity in itself, derives all its force from the acceptance of the parties. It presented to them proposals for their adoption or rejection. It proposed to the one party, to transfer certain property and perform certain other things; and to the other party, to pay certain sums of money and do certain other things. These terms were mutual and dependent, each forming the consideration of the other. The parties manifested their acceptance of the proposals by the part-performance of them. The award thus adopted possesses all the ingredients of a contract. It was fairly made, under circumstances which preclude a rescission of it by either party without the consent of the other. It must be enforced.

Culver
*v.*
Ashley.

The view which we have taken supersedes the necessity of examining the other questions which were discussed. The award was clearly unauthorized, without referring to the vexed question of awarding costs. The evidence of the mistake of the arbitrators, which doubtless should be excluded, (*Perkins* v. *Wing*, 10 Johns. R. 143,) could not, if received, impair an award which before had no validity. The parol evidence of the extension of the power of the arbitrators is immaterial, because the award is expressly and wholly founded upon the written agreement. And the compatibility of the different counts and the right to recover upon the latter ones, are rendered mere moot subjects ; inasmuch as we have founded our judgment on the count upon the award.

*Defendant defaulted, and judgment according to the auditor's report.*